ARKADELPHIA MILLING COMPANY *v.* BARKER.

Opinion delivered July 7, 1913.

1. ACTION ON CONTRACT—TRANSFER FROM LAW TO EQUITY.—A mere matter of accounting will not give equity jurisdiction, and in order to show a ground for transferring a cause to equity, on account of the complicated nature of an account, it must appear that it would be difficult for a jury to determine the issues of fact involved. (Page 177.)

2. ACTIONS ON CONTRACT—TRANSFER FROM LAW TO EQUITY.—In an action on a contract when the matter involved is merely one of proof and calculation, with no special intricacies, equity has no jurisdiction. (Page 179.)

Petition for mandamus; *James M. Barker,* Chancellor; petition denied.

STATEMENT BY THE COURT.

The petitioner applies to this court for a writ of mandamus to compel the respondent as chancellor to hear and determine a certain cause which was originally brought by M. H. Purifoy, as plaintiff, against the Arkadelphia Milling Company, as defendant, in the circuit court of Ouachita County, and which was by that court transferred to the chancery court upon motion of the defendant therein, over the objection of the plaintiff. When the cause reached the chancery court the plaintiff therein moved to remand it to the circuit court, which motion was by the court granted.

The petitioner set up that Purifoy filed his complaint in the circuit court of Ouachita County, claiming an indebtedness against the petitioner in the sum of $3,395.54 for staves sold to the petitioner under three contracts, set out and made exhibits to the petition therein, but which it is unnecessary to set forth at length. The contracts showed definitely the prices agreed to be paid for the staves, specifying their kind, number, grade and value. The petition shows that Purifoy, in the original cause, claimed that the petitioner was indebted to him in the sum of $430 for breach of contract entered into between Purifoy and the petitioner here in regard to the bucking of certain staves.

The petition sets out the answer and cross complaint of petitioner, defendant below, herein, to the complaint of Purifoy in the original action, and the answer admitted the execution of the contracts, but denied that the defendant owed the plaintiff the amount sued for, and denied that it had breached its contract in regard to furnishing the bucker for the staves. Denied specifically the allegations of the complaint as to damages, and set up

that defendant had already overpaid Purifoy for all staves received by it under the contracts, setting up specifically wherein it had complied with its contracts with plaintiff, and alleging breaches of the contract upon the part of the plaintiff and claiming, by way of cross complaint and counter-claim, that the plaintiff was due it the sum of $1,675.42, the difference between the amount the defendant had furnished and advanced to plaintiff and the sum due plaintiff for all staves delivered under the contracts at the contract price.

The petition shows that defendant in the cause below attached an itemized statement of its account with the plaintiff, making the same an exhibit to its answer, counter-claim and cross complaint; and the defendant prayed judgment in the sum of $1,675.42.

The itemized account set out each item of cash furnished Purifoy, and sums up the total thereof. It itemized the number of staves received by it under the contracts, giving the grade, dimensions and price.

The petition further set forth the motion that was made in the original cause by the defendant therein to transfer to equity, in which it is stated that, "the grading, counting and averaging of the 116,680 staves makes up a long and complicated account and involves a very complicated system of standard measuring and grading staves." And, further, "that the pleadings and exhibits thereto show that a trial of this suit involves a long, complicated, mutual running account between the plaintiff and the defendant, and that a fair consideration of the issues herein involved can not be had in a court of law."

The petition also shows the response that was made by the plaintiff in the original cause to the motion to transfer; and the plaintiff, in his response, alleged "that as to the items set out in defendant's statement, made an exhibit to said motion, and purporting to show amounts paid by it to January 1, 1912, amounting in the aggregate to $5,138.57, plaintiff admits that each of said checks and drafts was issued by the defendant, and that

the cash was advanced as set out in said statement, and with a possible exception of three or four of said items, they are properly chargeable to plaintiff.''

The petition shows that the cause was transferred on this motion to the chancery court, and that after the transfer had been made to the chancery court the plaintiff moved that court to transfer the said cause back to the law court, setting out in his motion that the answer did not contain any equitable defense, and that the action set up in the complaint was an action for debt on account and was cognizable in a court of law, and not in a court of chancery. The petition shows that the chancery court granted the motion to transfer or remand the cause to the circuit court, and refused to take jurisdiction of the cause. Wherefore, the petitioner prayed that a writ of mandamus issue out of this court compelling the chancery court to take jurisdiction and try the cause.

The chancellor, in his response to the petition herein, among other things, says that he assumed jurisdiction to hear the motion to transfer the cause to the law court after the same had been transferred to the chancery court. He heard the motion upon the allegations contained therein, and the exhibits thereto. He set forth in his response, ''that counsel for plaintiff in said cause in arguing said motion admitted that all staves had been disposed of by defendant in the market, and no grading or measuring thereof could be had by any order of the chancery court, which statement was not controverted by counsel for petitioner when reference was made thereto by the court.

''It appeared to respondent, from the exhibits filed by petitioner, that there was nothing for a chancery court to discover by causing an accounting between the parties and plaintiff in said cause admitted that all items making up said account up to January 1, 1912, aggregating $5,138.57, with the exception of three or four items thereof, were all properly chargeable to plaintiff's account; that as to the remaining items arising out of expenditures by petitioner after it took possession of the

staves under its cross bond, and which consist of amounts paid out in preparing said staves for market as they were to have been prepared under the contract, plaintiff admitted that each of said items had been expended by petitioner, but denied any of them were chargeable to plaintiff's account, plaintiff contending that petitioner was liable to him for the staves in the condition they were when it took them under the cross bond. Wherefore, it seemed to respondent there was no element of complication of account but a mere question of law as to whether said expense is to be charged to plaintiff's account; that as to the counting, measuring and grading of said staves, it appeared from the exhibits filed in said cause by petitioner that it had already caused each of said staves to be counted, graded, classified and measured, and the value thereof, at the contract price extended, and the total value of all staves extended and stated; that upon consideration of said matters, respondent was of the opinion that petitioner had a full and complete remedy at law, and sustained said motion to remand and ordered the cause remanded to said circuit court.''

*McMillan & McMillan,* for petitioner.

The fact that both parties have stated an account does not relieve the situation. The number of transactions and the large differences between them make it impractical to try the case before a jury.

This case is cognizable in chancery, and jurisdiction should have been retained by that court, even though the original jurisdiction may have been concurrent with that of the circuit court. 91 Ark. 231; 95 Ark. 122; 2 Am. Dec. 291, 298, 299, 306, 307, 308; 8 Ark. 57; 31 Ark. 353; 49 Ark. 576; 51 Ark. 198, 201; 89 Ark. 143; 74 Ark. 277; 82 Ark. 550; 3 Pomeroy, Eq.; 471, 472, note; 1 *Id.* 176; 48 Ark. 576; 102 Ark. 343.

*Warren & Smith* and *T. W. Hardy,* for respondent.
1.   The chancery court has no jurisdiction of this case. Mere intricacy of accounts will not give equity

jurisdiction. Bispham's Prin. Eq. (2 ed.), § 483; 8 L. Ed. (U. S.), 499; 98 Fed. 939; 120 Fed. 440; 20 Am. & Eng. Ann. Cases, 901; 88 Ark. 108.

2.   Where jurisdiction is concurrent the court first obtaining jurisdiction should retain it.   11 Cyc. 983, 985.

3.   The chancellor exercised his discretion in the discharge of a judicial function which can not be controlled by mandamus.   98 Ark. 505; 82 Ark. 483; 80 Ark. 61; 77 Ark. 101; 28 Ark. 295.

WOOD, J., (after stating the facts).   In *Loeb* v. *German National Bank,* 88 Ark. 108, the motion to transfer alleged that "the defendants had been customers of the plaintiff for nearly four years; had continuously borrowed money from it, executing to plaintiff about seventy-five notes, ranging in amounts from $500 to $12,000; that the average amount borrowed, or renewed, each year amounted to about $20,000, or an aggregate of approximately $90,000; that during said period they had also endorsed notes at the bank for other parties to the amount possibly of from $65,000 to $75,000; that during the time they had deposited with said bank from time to time collateral notes ranging in amounts from fifteen to twenty thousand dollars; that at all times during said period there was an excess of collateral notes, in excess of the amounts defendants were indebted to said bank; that at various times during said period collaterals so deposited were realized upon by said bank, and the amounts collected thereon were applied to the payment of the various notes and interest executed by defendants; that it is impossible for defendants to state, owing to the large number of transactions between the parties, the calculations of interest of the various notes, the various off-sets and appropriations of collateral to the various notes, just what amount is now due, if any, by said defendants upon the notes sued upon herein."

In that case we said:   "The transfer to equity was properly denied.   No equitable defense was pleaded in the answer, or set up in the motion to transfer.   It is a mere invitation to have an accounting in order to ascer-

tain whether or not the defendants have a defense. There is nothing set forth, either in the answer or the motion, but what could be ascertained in a court of law without the interposition of equity.''

There was much stronger reason for transferring to equity in that case than there is in this, because in that case it was alleged that it was impossible 'for defendants, owing to the large number of transactions between the parties, to make an accurate statement of the amount due upon the notes sued upon, if any, by reason of the fact that the evidence upon which they relied was in possession of the opposite party. But here the pleadings and exhibits show that the parties to the contract, which was made exhibit, had an accurate guide in the contract itself for stating the account. There was no complication or difficulty in the, matter of accounting. The question at issue between the parties, as shown by their pleadings, and their exhibits, was as to whether or not the parties respectively had performed the obligations of the contract.

Counsel for petitioner, in their brief, state: ''We know that in this case petitioner made up its statement from the counting, measuring, etc., according to the rule fixed by the contract from its different graders or as made by its different graders. We presume that is the way Purifoy made up his statement also. So it will be necessary for the parties, on the trial of this case, to bring their graders before the court, and let them show the court by their testimony, and by their original figures made and entered at the time the grading was done, and how, under the rule fixed by the contract, they determined the grade and class and therefore the price of the staves.''

Counsel are correct in their conclusion, but it only shows that the question at issue between the parties was not so much a matter of account as it was whether the parties had carried out the terms of the contract, that is, as to whether the plaintiff had delivered the staves of the kind, grade, number and price alleged in the com-

plaint. And whether or not, on the other branch of the case, the defendant had breached its contract by failing to furnish plaintiff the bucker specified therein according to the terms of the contract, and whether plaintiff had furnished the staves that he alleged he had furnished to be bucked. In other words, whether the defendant had breached its contract in that particular and damaged plaintiff in the sum of $430 as alleged.

There is certainly in all this no question of long, complicated, mutual, running accounts, as petitioner, the defendant below, alleged in its motion to transfer. It was peculiarly within the province of a jury to determine the questions raised by the pleadings on that issue, and there is nothing to impeach the statement made by the respondent, that counsel for petitioner on the argument of the motion to transfer virtually admitted that all staves had been disposed of by defendant in the market, and no grading or measuring thereof could be had by any order of the chancery court. Then there is nothing pertaining to the issue as to whether plaintiff had furnished the staves according to the terms of the contract, and whether the defendant had paid him for the same, that was properly a matter within the jurisdiction of the chancery court. But, on the contrary, it was peculiarly a question for the law court and for the jury, under the evidence that might be adduced affecting that issue.

There is nothing, also, to impeach the statements in the response in regard to the accounting, that the admissions made as to the items of the account being correct, except three or four, reduced this issue to a very simple proposition or question of fact to be determined by the evidence *pro* and *con,* without complication. The same with reference to the items of expense incurred by the defendant (petitioner) after it took possession of the staves, in preparing the same for market; that plaintiff admitted that each of these items had been expended by the defendant, the petitioner, but simply denied that any of them were chargeable to plaintiff's account. This

presented also a simple question of law, depending upon the construction of the contract, and was proper for the law court to pass upon.

We are of the opinion that the chancery court was correct in its conclusion that petitioner had a full, complete and adequate remedy at law, and that it was correct in not assuming jurisdiction to try the cause and in transferring the same to the law court.

A mere matter of accounting is not sufficient to give equity jurisdiction. The case must be one where, on account of the complicated nature of the accounts, it would be most difficult, for a jury to determine the issues of fact involved before the chancery court should take jurisdiction. Where it is merely a matter of proof and calculation, with no special intricacies involved, but a simple suit on contract, the chancery court will not take jurisdiction. *Terrell* v. *Southern Ry. Co.,* 20 Am. & Eng. Ann. Cases, 901; *Randolph* v. *Tandy,* 98 Fed. Rep. 939; *Amr. Spirits Mfg. Co.* v. *Easton,* 120 Fed. 440.

As was said by Chief Justice Marshall, in *Fowle* v. *Lawrason,* 8 L. Ed. U. S. Sup. Ct., p. 495: "It can not be admitted that a court of chancery may take cognizance of every * * * contract expressed or implied consisting of various items where definite sums of money have become due, and different payments have been made. * * * It may be safely affirmed that a court of chancery can not draw to itself every action between individuals in which an account is to be adjusted."

The petition for mandamus is therefore denied.